IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Duran W.,<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security,<br><br>Defendant. | Case No. 6:25-cv-11332-JD-KFM<br><br>**ORDER** |

This matter is before the Court for review of the Report and Recommendation (the "Report") of United States Magistrate Judge Kevin F. McDonald, issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) (D.S.C.). (DE 32.) The Report recommends affirming the Commissioner of Social Security's final decision denying Plaintiff Duran W.'s[1] ("Plaintiff") claim for Disability Insurance Benefits ("DIB"). Plaintiff timely filed specific objections to the Report (DE 34), and the Commissioner responded (DE 37).

For the reasons below, the Court overrules Plaintiff's objections, adopts the Report's recommendation and those portions of its reasoning consistent with this Order, and affirms the Commissioner's final decision.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in Social Security cases, federal courts refer to claimants only by their first names and last initials.

## A. Background

Plaintiff filed a Title II application for DIB, alleging disability beginning October 13, 2022. After a May 7, 2025, hearing, Administrative Law Judge ("ALJ") James Martin issued an unfavorable decision on May 15, 2025. (Tr. 17–26, 36–64.) Plaintiff remained insured through December 31, 2028. (Tr. 17.)

The ALJ found that Plaintiff had severe impairments of right-knee degenerative changes, status post right-femur fracture, and metastatic prostatic adenocarcinoma. (Tr. 19.) The ALJ also considered several other conditions and found, among other things, that Plaintiff's reported depression did not constitute a medically determinable impairment. (Tr. 20.)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that he could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, stoop, kneel, crawl, and crouch; could frequently balance; and could occasionally work in high exposed places. (Tr. 21.) Although the ALJ found that Plaintiff could not perform his past relevant work, he relied on vocational expert testimony to conclude that Plaintiff could perform other jobs existing in significant numbers in the national economy, including cashier, mail clerk, and folder. (Tr. 24–25.) The ALJ, therefore, concluded that Plaintiff was not disabled from October 13, 2022, through May 15, 2025. (Tr. 26.)

The Appeals Council denied review on July 29, 2025, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. (Tr. 1–3.)

In this Court, Plaintiff challenged, among other things, the ALJ's evaluation of his treatment-related symptoms, the absence of off-task and absenteeism limitations from the RFC, the evaluation of treating oncologist Zeeshan Ali, M.D.'s opinion, and the treatment of Plaintiff's depression. (DE 28; DE 30.)

**B. Report and Recommendation**

The Report recommends affirming the Commissioner's decision, concluding that the ALJ applied the correct legal standards and that substantial evidence supports the RFC and ultimate non-disability determination. (DE 32 at 21.) Although the Report observed that portions of Plaintiff's briefing, particularly the argument concerning off-task time and absenteeism, were not developed with specific record citations, it also addressed the challenged issues on their merits. The Report ultimately found that the ALJ's decision contained sufficient explanation to permit meaningful judicial review. (*See* DE 32 at 9–10, 20–21.)

As to Plaintiff's alleged treatment-related limitations, the Report concluded that the ALJ adequately considered fatigue, hot flashes, leg weakness, pain, and medication side effects in formulating the RFC. It emphasized that the ALJ imposed restrictions beyond those assessed by the state agency physicians to account for Plaintiff's residual symptoms and found that the record did not require additional limitations for off-task time or absenteeism. (DE 32 at 8–10, 19–20.) The Report reasoned that, read as a whole, the ALJ's discussion provided a sufficient narrative explanation for the RFC even though the decision did not assign a specific percentage of off-task time or number of monthly absences.

The Report also found no reversible error in the ALJ's evaluation of Dr. Ali's April 2025 medical source statement. It concluded that the ALJ adequately addressed the opinion's supportability and consistency by identifying asserted internal inconsistencies, Dr. Ali's contemporaneous treatment records and ECOG findings, and other record evidence the ALJ considered inconsistent with the proposed limitations for frequent rest, unscheduled breaks, and more than four absences per month. (DE 32 at 11–15.) The Report also concluded that substantial evidence supported the ALJ's determination that Plaintiff's reported depression was not a medically determinable impairment, relying on the situational and infrequent nature of the reported symptoms, improvement with medication, generally normal mental-status findings, and the requirements of 20 C.F.R. § 404.1521. (DE 32 at 5–7.)

Finally, the Report rejected Plaintiff's broader challenge to the ALJ's evaluation of his subjective complaints. It found that the ALJ considered the relevant SSR 16-3p factors, credited some of Plaintiff's reported symptoms by imposing additional RFC restrictions, and adequately explained why the alleged degree of limitation was not fully consistent with the record. (DE 32 at 15–20.) The Report, therefore, concluded that the Commissioner's decision was supported by substantial evidence and free of legal error and recommended affirmance.

### C. Legal Standard

A magistrate judge's recommendation has no presumptive weight, and responsibility for making a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must make a de novo

determination of those portions of the Report to which a party makes a specific objection and may accept, reject, or modify the recommendation, in whole or in part. 28 U.S.C. § 636(b)(1).

An objection is sufficiently specific when it reasonably alerts the district court to the true ground of the objection. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). A party need not frame its arguments anew, and repetition of arguments previously presented does not defeat de novo review when the objection is otherwise specific. *Osmon v. United States*, 66 F.4th 144, 146–47 (4th Cir. 2023); *Elijah*, 66 F.4th at 461. When no specific objection is made, the Court need only satisfy itself that there is no clear error on the face of the record. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Judicial review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Dowling v. Commissioner of Social Security Administration*, 986 F.3d 377, 382–83 (4th Cir. 2021). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). A reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute" its judgment for that of the Commissioner. *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83, 95 (4th Cir. 2020).

The deferential standard still requires a reviewable explanation. A court asks whether the ALJ examined the relevant evidence and "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Drumgold v. Commissioner of Social Security*, 144 F.4th 596, 605 (4th Cir. 2025) (quoting *Shelley C. v. Commissioner of Social Security Administration*, 61 F.4th 341, 353 (4th Cir. 2023)). The RFC assessment must include a narrative discussion explaining how the evidence supports the functional limitations assessed and how it resolved material inconsistencies or ambiguities. SSR 96-8p, 1996 WL 374184, at *7. Remand is appropriate when the failure to assess a relevant function despite contradictory evidence, or another inadequacy in the analysis, prevents meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015); *Monroe v. Colvin*, 826 F.3d 176, 188–89 (4th Cir. 2016).

**D. Discussion**

Plaintiff's objections specifically identify the Report's treatment of off-task time, absenteeism, Dr. Ali's opinion, and related symptom evidence. The Court, therefore, reviews those issues de novo. The Court has reviewed the balance of the Report for clear error and finds none.

**1. Off-Task Time and Absenteeism**

Plaintiff first argues that remand is required because the written decision contains no express numerical finding for off-task time or monthly absences. (DE 34 at 2–4.) The issue, however, is not whether the ALJ used a particular phrase or number. It is whether he assessed the asserted functional limitations and supplied

enough reasoning to permit substantial-evidence review. *See* SSR 96-8p, 1996 WL 374184, at *7; *see also Thomas v. Berryhill*, 916 F.3d 307, 311–12 (4th Cir. 2019).

The ALJ identified the symptoms Plaintiff claimed would interfere with sustained work, including nausea, fatigue, hot flashes, mood swings, leg weakness, difficulty completing tasks, and difficulty concentrating. (Tr. 21.) He found that Plaintiff's medically determinable impairments could reasonably produce the alleged symptoms but did not accept their alleged intensity, persistence, and limiting effects in full. (*Id.*) He then discussed the treatment course, acknowledged residual nausea, arthralgia, hot flashes, leg weakness, and fatigue, and expressly stated that "[d]ue to his residual arthralgias, hot flashes, leg weakness, and fatigue, he is limited to light work with the postural and environmental limitations noted above." (Tr. 22.) He also stated that pain, fatigue, and medication side effects were considered in formulating the RFC. (*Id.*)

The longitudinal record contains evidence supporting both sides of the dispute. In February 2023, Plaintiff reported severe fatigue lasting more than two weeks and spending substantial time in bed or on the sofa. His chemotherapy was later reduced by twenty percent because of severe fatigue. (Tr. 736–38.) Later records continued to document fatigue and hot flashes, but generally at mild-to-moderate levels, together with largely benign examinations and repeated ECOG performance scores of zero, with some later scores of one. (*See*, e.g., Tr. 875, 880, 899, 990, 1024–25, 1061–63.) The Court, therefore, does not read the ALJ's statement that fatigue had "waned" to mean that fatigue disappeared. Read in context, the ALJ treated fatigue as a

continuing residual symptom but found its functional effect less restrictive than Plaintiff alleged. An ALJ need not discuss every piece of evidence so long as the path of reasoning remains discernible. *See Reid v. Commissioner of Social Security*, 769 F.3d 861, 865 (4th Cir. 2014).

That distinguishes this case from *Monroe*. There, the ALJ found impairments capable of producing the claimant's alleged loss-of-consciousness episodes and fatigue but never determined whether the claimant actually experienced symptoms requiring work breaks and, if so, how often. 826 F.3d at 188–89. Here, the ALJ evaluated the symptoms alleged to cause workplace interruption, explained why he did not accept the alleged degree of limitation, identified the residual symptoms he did accept, and separately rejected Dr. Ali's opinion that those symptoms required frequent rest, unscheduled breaks, and more than four absences per month. The Court can, therefore, trace the path from the evidence to the omission of additional off-task and attendance restrictions without supplying its own medical rationale. *See Thomas*, 916 F.3d at 311–13.

The vocational testimony confirms that the disputed limitations would be material if supported. The ALJ asked about two absences per month, and the vocational expert testified that such absenteeism would eliminate competitive work. Plaintiff's counsel separately elicited testimony that off-task time above ten percent would be work preclusive. (Tr. 61–62.) The testimony shows that such limitations would be vocationally consequential, but it does not establish that the record required the ALJ to include them in the RFC.

Plaintiff also argues that the Commissioner and the Report supplied a rationale missing from the decision. A reviewing court may not affirm on a ground the agency did not invoke. *See Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013). The Court does not do so here. The ALJ's own decision addresses the symptoms alleged to cause workplace interruption and expressly evaluates the opinion imposing break and attendance limitations. The Court does, however, decline to rely on the Report's additional observation that Dr. Ali's notation of visits every three months "appears to undermine" absenteeism. (DE 32 at 10.) Scheduled appointment frequency does not, without more, resolve whether symptoms or treatment effects would cause unscheduled absences, and the ALJ did not rely on that inference. Accordingly, the absence of an express numerical off-task or absenteeism finding does not require remand on this record.

**2. Dr. Ali's Opinion**

Dr. Ali's April 1, 2025, medical-source statement identified fatigue, lethargy, pelvic pain, hot flashes, and arthralgia and opined, among other things, that Plaintiff would require frequent rest and unscheduled breaks and would miss more than four days of work per month. (Tr. 1127–28.) Because Plaintiff filed his claim after March 27, 2017, the ALJ evaluated the opinion under 20 C.F.R. § 404.1520c. Under that regulation, supportability and consistency are the most important factors and ordinarily must be explained. 20 C.F.R. § 404.1520c(a), (b)(2), (c)(1)–(2); *see Drumgold*, 144 F.4th at 605–08.

The ALJ found Dr. Ali's opinion unpersuasive because it lacked supporting explanation, was unsupported by Dr. Ali's contemporaneous treatment records, and was inconsistent with other evidence. (Tr. 24.) In addressing supportability, the ALJ cited Dr. Ali's January and March 2025 examinations, which reflected ECOG scores of zero and generally normal findings. (Tr. 1108–09, 1120–22.) The ALJ did not treat those ECOG findings as conclusive; he found the ECOG assessments only somewhat persuasive because they did not fully account for Plaintiff's knee impairment and reported fatigue, arthralgias, hot flashes, and weakness. (Tr. 24.) As to consistency, the ALJ cited other generally normal examinations and Plaintiff's own reports concerning functioning and concentration. (*Id.*)

The Court need not endorse every reason the ALJ gave. In particular, the questionnaire's statement that Plaintiff could perform sedentary work is not necessarily inconsistent with an asserted need for unscheduled breaks or absences. Even setting that rationale aside, however, the ALJ separately addressed supportability and consistency and identified evidence bearing on both. Plaintiff points to contrary longitudinal evidence that could support a more restrictive assessment, but resolving that conflict belongs to the ALJ, so long as the ALJ applied the regulatory factors and the explanation is supported by substantial evidence. *See Drumgold*, 144 F.4th at 605–08. The Court may not reweigh the competing evidence. Plaintiff's objection to the evaluation of Dr. Ali is therefore overruled.

**3. Depression**

Plaintiff also relies on a December 2024 assessment of recurrent major depressive disorder and his hearing testimony concerning depression and social withdrawal. (DE 34 at 7; Tr. 54–55, 1015.) The ALJ considered those reports but found no medically determinable mental impairment, noting that the complaints appeared situational and infrequent, improved with medication, and were accompanied by generally normal mental-status findings. (Tr. 20.) Under 20 C.F.R. § 404.1521, an impairment must be established by objective medical evidence from an acceptable medical source; symptoms, a diagnosis, or a medical opinion alone do not establish its existence. The cited December 2024 record also documents infrequent symptoms, improvement with Wellbutrin, and normal mental status findings. (Tr. 1013–15.)

*Shelley C.* does not alter that threshold requirement. There, the ALJ had found severe depression, and the Fourth Circuit addressed the improper use of objective corroboration to discount the intensity and limiting effects of symptoms arising from established chronic depression. 61 F.4th at 361–62. Here, the ALJ considered Plaintiff's reports, treatment response, and mental status findings and also considered alleged mood swings and difficulty completing tasks and concentrating in the symptom analysis. (Tr. 20–21.) Plaintiff's objection, therefore, does not establish reversible error on this ground.

**D. Conclusion**

For these reasons, the Court **OVERRULES** Plaintiff's objections (DE 34), **ADOPTS** the Report and Recommendation (DE 32) to the extent consistent with this Order, and **AFFIRMS** the Commissioner's final decision. The Clerk of Court is directed to enter a separate judgment pursuant to Federal Rule of Civil Procedure 58 and close this case.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 21, 2026